Well, we raised a number of issues in our petition for review. One was the IJ's finding of no good cause for continuance when her counsel entered their appearance three days prior to the individual hearing because her prior counsel had passed away and the immigration judge found that there was no good cause. It seems to me that he was more concerned about how long the case had been in removal proceedings than seeing that she got a good hearing. The second issue that we raised was the immigration judge's failure to provide a Nahuatl interpreter and it was based on his impression that she was fluent in Spanish even though Nahuatl was identified as her language and that she said that she knew more Nahuatl than Spanish and that she had difficulty understanding many of the expressions during the individual hearing. As to that issue though, you know people can speak more than one language so long as they're fluent in a language. Isn't that what we're looking at here? Isn't that what the issue is? Yes, your honor. My point is that whether or not she was fluent was just based on the immigration judge's impression. He's not fluent in Spanish himself and she did have difficulty during the individual hearing understanding and responding to the questions. Now, the immigration judge didn't even try to get a Nahuatl interpreter on the telephone. I know from my experience on other cases that a Nahuatl interpreter is available by telephone. I just think that due process required that we have her best language in order for her to communicate her position. First of all, how long before the hearing did the fire lawyer die? It was a couple months, wasn't it? Well, I don't have that recollection. As far as how long before he passed away, I don't have that on my fingertips. I thought that was in June. The hearing was in July. Was that not accurate? It was in May. But the bigger question is, assuming there were problems in both respects, you have to show prejudice, don't you? So, you have to show that she had some kind of a case and that's from having a problem. Well, you know, other than that, the Nahuatl interpreter would be available. I think the government, the BIA was wrong when it said that she's identified no particular issues she wasn't able to understand. Several different times she said, I don't understand. So, yes, let's assume that there was a problem. What's the prejudice? I mean, she did answer some things. Did she articulate anything? Well, your honor, that goes to, I think, her underlying claims. I mean, the immigration judge found that she did not meet her burden of proof, but he made no adverse credibility finding. And she testified credibly that, you know, she was deprived of food, water, employment, because she wasn't supporting a group politically and electorally. And that was the basis of her persecution. Now, how did she not meet her burden of proof? That was one of the issues that we raised in our petition for review. So, I don't know, maybe if she had understood those questions, maybe the immigration judge would have found that she did meet her burden of proof. But hold on, counsel. Are the issues that she's raising sort of generalized, generalized fear of prosecution, of persecution? What exactly, is there more specific other than generalized fear? Well, I would say no. I would say it's more than just a generalized fear. She was suffering persecution. They were depriving her of food, water, employment. And unless they, unless she supported this group electorally, and she did not, and that's why that she was persecuted. So, it's, you know, it was generalized fear, it was because she wasn't participating in their political agenda. Now, the other issue raised in my petition was the fact that her, that her, she was denied an opportunity to apply for cancellation of removal. She entered the country in February of 2004. She was served an NTA, a putative NTA on January 20th, 2011. The NTA failed to trigger the top stop time rule because it did not include the date and time of the hearing. Consequently... We've decided that question, have we not? Okay, you've decided that question? The petitioner accrued, has continued to accrue a continuous presence in the United States, and she had a son born in April of 2016. And therefore, she should have been given the opportunity to provide for cancellation or removal for certain non-permanent residents. And then the last issue is the failure to recognize that the court had lacked jurist subject matter jurisdiction. DHS, the Department of Homeland Security, is charged with vesting jurisdiction with the Department of Justice EOIR court by filing an NTA with the court. The NTA has certain statutory requirements, including the date and time of the hearing. The regulation interpreting the date and time requirement added the phrase where practical. The regulation rewrote the statute to make the date and time of the hearing an optional inclusion for an NTA to be valid. The NTA is not valid to vest jurisdiction with the Department of Justice EOIR, and the regulation is invalid in that it rewrote the statute to make a mandatory requirement optional. The remedy, DHS reissued the NTA with the statutory required date and time of the hearing. A subsequent notice of hearing issued by the Department of Justice is not sure the failure of the Department of Homeland Security because the Department of Homeland Security, not the Department of Justice, are charged with vesting subject matter jurisdiction with EOIR. EOIR cannot statutorily vest jurisdiction in itself, and I should have decided this issue. I'm sorry, go ahead. Are you familiar with the court's decision in Karen Gethy? We are Furman. We've decided. That's what I said. Mr. Walters, I have a question to you, and if we can stop that argument that you currently have. If you could move on to the argument of prejudice. For me, that's important, and I'm not sure if I'm understanding. What about the issue about the fact that she had a child? Is that an issue of prejudice that would have been or could have been raised? Well, I'm saying that because she had a child, she accrued the 10 years of continuous presence and therefore should have been given the opportunity to apply for cancellation of removal, and that's an issue with prejudice. So you're indicating that would be a basis for what? I'm sorry, what's that? For the immigration judge to have considered what? Well, the immigration judge, she was short of the 10 years at the time of the individual hearing. However, because she had a punitive NTA, the continuous presence continued to accrue, and therefore she acquired it, and the BIA should have remanded it so that she could have applied for cancellation removal for certain non-punitive reasons. Okay, thank you. Your time is just about up. I'll give you a minute. All right, thank you, your honor. May it please the court, Yannol Youssef for the attorney general. The petition for review should be denied, and I'll address a couple of issues that have been discussed during opposing counsel's time. The issue of prejudice that your honors have noted on is why the petitioners claim the challenge, the denial of the continuance, and the choice of in terms of the language. The BIA has identified no particular instances in which she was unable to understand, but in fact, during the hearing, she said five or six different times, I don't understand. So that's just wrong. Does that completely start with that? Well, your honor, I know there were instances where she noted that she wasn't understanding a question or something like that. It was subsequently clarified to her, and she was I think that's no, she was very confused. She answered a different question. She didn't really, I mean, it does appear pretty obvious that the language thing was causing a problem. Well, I disagree with that, your honor, in terms of the characterization of that, but I think it still goes back to the issue of prejudice. And as this court has held that the question regarding the issue of translation in the language, the petitioner has to be able to meaningfully participate in their, in the proceeding, be able to present their claim so that it's, so that they present their claim for relief as he or her withholding claim. Here she was able to testify and she. I have a question. Are we then putting the burden on the, on the folks to make sure that we go and make sure, what if the, what if the person doesn't feel comfortable raising the issue of a misunderstanding based upon a language barrier? Are we putting the burden then on the, these individuals? Well, your honor, it is the petitioner's responsibility to request the language and notify the court of the language they're most comfortable with. And if you look at her asylum application, she noted, she specifically identified Spanish as her native language, and then also listed Nahuatl as a language that she's fluent in. So in both those, she, so she indicated to the court twice that Spanish was a language she was comfortable with. There was a period of time when she was being cross-examined by the DHS attorney in which the DHS attorney asked her, it seems to me that you're understanding what I'm asking you and the interpretation just fine, in which she said yes. So there were many instances where like she cleared, there was indication of Spanish as a language that was perfectly adequate and sufficient for her to be able to proceed and present her claim before the immigration judge. But it also turns onto the fact that even if there was any issues with the language, she has to show prejudice and she hasn't shown anything in terms of either on appeal to the board or before this court, what, in what manner she was in any way prejudiced by the language of interpretation. She references in her brief that there were critical questions she may have had difficulty understanding, but doesn't identify what those critical questions are, doesn't identify what testimony or what aspect of her claim was impacted by the language of interpretation. So it is her burden in demonstrating that there was a, in her claim due process violation, that the outcome of her proceedings were affected here by the language of interpretation, and she doesn't do that here. She, I don't believe she even alleges any specific prejudice outside of general misunderstanding of the proceedings, but that's insufficient. She needed to show more and she failed to do that here. And just to be clear, Mr. Yusuf, you are conceding the fact that having one day of preparation for a merit series based upon the facts we have before us, that that is insufficient to prepare, correct? I guess based on the immigration judge's perspective on this, that they, I guess in terms of looking at a denial of a continuance, it's whether there's a clear abuse of discretion here. The immigration judge considered multiple factors, including the fact that the council had previously represented her on two separate occasions, that the merits hearing had been scheduled over a year in advance, that there was the fact that her application was presented, excuse me, the application was prepared with the assistance of council. And whether or not the question is if that's sufficient time or not, that's, that's left to the discretion of the immigration judge and that discrimination, excuse me, the immigration judge has wide latitude in that sort of circumstance, unless there's a clear abuse of that discretion. But again, this once again turns also on the fact that there has been no showing of prejudice. What was she prevented from presenting based on the denial of the continuance? And she doesn't present. Well, she does say, the one thing that she says is that and also in her declaration that political parties and forces to vote, if we don't have both, will they want an office? We get threatened, they turn off the light in the water and testimony. She said the food, would that not be persecution if it were elaborated on in some fashion? That may have been, that may have been a claim for persecution to further pursue. She could have presented on appeal to the board, as well as to this court, what evidence she would have further developed, what, how her testimony would have been further developed, but for the denial of the continuance regarding that issue. She could have presented evidence of, or statements regarding the level of harm she endured. She could have presented statements that, or further documentary evidence to show what happened and the suffering and what existed and the reasoning behind it. But she never did that. And that's, that's her burden demonstrating that she was in due process regarding the denial of the continuance. So I think that's, that's where these claims fail is that she hasn't shown that the outcome of her proceedings were affected by either the language of interpretation or the denial of the continuance. And that's why she cannot succeed on either of those grounds. So had she, she'd been able to address those in declarations at the appeals level of board of appeals or immigration appeals, you're saying that she would have done that because she clearly didn't have that opportunity with one day preparation by her counsel, correct? Well, I mean, the thing is that her applications for relief, I think the lease of the declarations were submitted over three or four years prior to the hearing. And she had known about her hearing starting in September of 2016 for the August 1st, 2017 hearing. So there was a lot of time there to, with counsel, present evidence, present further, develop further the record on that issue. So she could have done that then, or she could have filed with the board, a motion to remand, including the additional evidence or a declaration stating, this is what I would have presented, but for the denial of the continuance. And so that she had that opportunity to do so, and she didn't do it then. And she could have just laid out exactly what she was deprived from presenting, what exactly the details of that claim was. And she didn't do that again. So that that's where the issue, where her claim fails is that she had to demonstrate this and she simply failed to do so. And I take it, this lawyer had represented her before and had some familiarity with her situation. Yes, he represented her on two separate occasions in 2015 and 2016, I believe. But on procedural, I mean, very, very brief, not on the marriage. Yeah, that's correct, Your Honor. Yes. And also just to correct the, I mean, just to, it was addressed at the beginning of opposing counsel's time. I believe that her opposing counsel passed in May, and three months later is when the hearing was held on August 1st. And the counsel was retained on July 28th. So just, I believe, three days prior to the hearing, just to update the court on that. We don't know whether she was told that he died right away, or whether she didn't know it until just before, or who arranged for this new lawyer, or anything like that either. Yeah, and again, that would be the, that would be her burden in presenting the issue, in presenting that due process claim to demonstrate exactly what happened in the circumstances in order for her to have a successful claim on those grounds. On the issue that Mr. Walters was arguing at the end, is there any distinction between this case and another case that has decided the question? He seems to be saying it's directly a Pereira case, not because she could have shown accumulation of the appropriate amount of time. Is that true or not? No, I don't believe so. I do think Taniguchi is holding, holding still control here. I mean, firstly, the petitioner never raised this Pereira claim to the agency in the first instance. So there's the question of exhaustion in regards to the, whether or not the stop time rule is involved, or anything like, the implications of the stop time rule. And additionally, in terms of the cancellation removal, he has never, she has never raised that before. The agency has never looked at it. So in the first instance, it should be in a motion to reopen with the agency to consider that. But I still, but that said, Sorry, say that again, Your Honor. He never applied for cancellation. No, she never applied at all. And there was no indication that she was interested in that. And so that's why it would have to be brought to the agency in the first instance, anyhow. But in terms of the argument regarding jurisdiction of the immigration court regarding the, the, the NTA that, that was lacking the time and date, that, that argument is foreclosed by Karen Pepe. I believe my time is up, Your Honor. If there are no further questions. Thank you. Thank you, Your Honor. Mr. Walters. No, Your Honor. No? I'm sorry, I'm not hearing you. I have nothing else to add.  Thank you. Andres Belotti versus Barr is submitted, but we'll go to Barr versus Barr and we will then change that shortly.
judges: Schroeder, Berzon, Mendoza